I'm Todd Lance, along with Steve Eckley, I represent Clarke Company, Limited in this appeal. According to American Family's brief on page 15, the critical issue in this case is whether the HOA lawsuit sought damages from Clarke because of property damage that had occurred during the American Family Policy period. I agree with that general statement, but the so-called critical issue here is really dependent on two more precise questions, both of which I submit are answered by Iowa law. Number one, how does a court determine the scope of this lawsuit? And number two, how certain does the court need to be about its interpretation of the HOA lawsuit? On the first question, the HOA's petition, we all cite to Iowa law stating it is the starting point, but that phrase starting point necessarily means there is more, and in fact the . . . Nobody cites a case as to whether it's fact or law. We do cite cases, Your Honor, that state that it is a question of law as to the application of the legal principle regarding a duty to defend to the information that was before the insurance company and that not only the petition but also the information supplied at that time. You state what you think the answer should be in your brief, but interpretation of a contract is an issue of law. Correct. Well, is interpretation of a pleading the same? And if so, it doesn't seem to be quite the same at all. It is not so much the interpretation of the pleading that the court was asked to . . . That's not the judgment that the district court takes on. The standard, importantly, is whether it is a rational possibility from all the information that had been available to the insurance company, and that, I submit, is an exercise in judgment based on legal principles. It sounds like it, but it also sounds like a finding when the district court says that the underlying suit did not claim damages in the policy period. The court . . . It's just a temporal fact issue. The court itself framed it as a conclusion of law, and in fact, Eighth Circuit and Iowa cases have firmly stated that the decision of whether there is a duty to defend based on information available is a question of law review de novo. In addition, at best is a mixed . . . You know, like when we're doing guidelines criminal cases. Well, a district court's underlying findings are reviewed for clear error, but the ultimate conclusion is reviewed de novo. Why isn't this like that? I don't think the court made any underlying finding as to exactly what the . . . I think there is an exercise of judgment, and it is a mixed . . . at best, a mixed question of law and fact. Yeah, but where in the mix is the decision, based on a facial review of a pleading, that the damage claimed is post-policy period? On the mixed question of law and fact, both sides have sided to a case from the Eighth Circuit. The issue you're reviewing calls for an exercise of judgment about values underlying legal principles, and it requires consideration of legal concepts. I submit that's exactly what the district court was doing when it decided what is a rational possibility, because that, going back . . . But isn't the rational possibility here really a question of fact, and that is the allegations alleged that something occurred, and on what dates did those actions occur, right? And so, the determination that that's outside of the coverage period, that's a fact question, isn't it? I mean, other than . . . it doesn't take any . . . all we're looking for is, if there's an occurrence alleged, and it happened on X date, you know, pick a date, it's either in the policy period or not, the determining what the date alleged is, that's a fact question, right? Well, determining what the alleged date . . . I guess what . . . the question isn't, though, what the alleged date was. The question is whether there is a rational possibility that the claims and all the information supplied suggested a claim that would have included damage in the coverage period here. And, in fact, as to the question of when exactly, based on the evidence submitted, the damage actually did start, the parties have stipulated that there is no evidence to contradict a report saying all of these repair costs were required because of property damage that existed and was severe and widespread during American families' coverage period. This is stipulated . . . What's all of this? Is that your expert, who the district court found not credible? This is the expert report, Parley, who . . . Yeah, the district court found his speculation not credible. That clearly is a fact claim. Well, the stipulated record was that there was no evidence to contradict the conclusion in his report. And there is . . . Did the other side stipulate that Parley was credible? They did not stipulate . . . the stipulation did not say credible. But I understand there is no other evidence as to the timing or inception date of the damage? I wouldn't expect there to be. Right. Well, was Parley's report provided to the insurance company before the litigation commenced? His 2016 report was not. That was evidence developed in the purpose of coverage, as often happens in notice pleading in Iowa and, frankly, a common sense happening in many construction disputes. Homeowners don't understand and don't know about the amount of hidden damage they have. They, on first notice, take the least intrusive repairs, and eventually something manifests itself that causes them to investigate thoroughly and understand what happened. In this case, that was the ice stands. Well, let's assume for a moment that the insurance company, based upon its initial review of the complaint and the other information . . . and I do think you're correct. They have to look at all the information, not just the complaint. But let's just say they made the right determination, but then you open it up and you find clearly pre-existing damages. Do you have some obligation at that point then to tell the insurance company, hey, you know, you made this initial determination, but now we got some additional evidence. And did you tell the insurance company about the additional evidence? I think there's two responses, a legal response and a practical response to that issue. And that's something certainly underlying American Families Brief is, hey, you could have told us more. The legal response is once they've denied coverage and erroneously done so, then there is no obligation for us to continue to comply with any conditions of the policy. But the practical answer also is if you look at the coverage denial letter, it raises a host of different arguments, including the position that there is no coverage for defective construction because it's not an occurrence. It took six years later in the Westlake case for that misconception to be corrected. And so, as a practical matter, there wasn't much to supplement as to the timing of damage because there was this threshold problem about the initial coverage in the first place. What we think the district court missed largely here was the practical reality of how water intrusion investigations unfold and how these claims develop. Now you're doing just the way I read your brief. You're arguing that the damage was there. I don't think that's the issue. The question is, did HOA claim it? There's no question that HOA, if HOA lawyers before they filed their complaint had sat down with you, you would have structured a complaint that would have guaranteed coverage. They didn't do that. Most third-party plaintiffs would want to do that. They want to bring a claim that's covered because it increases, obviously, what they're likely to recover. HOA's lawyers didn't do that. And they had every reason to think, as a matter of fact, that the little bit of leaking that they knew about before the 2009 winter, it basically had gotten a quick fix. And we wouldn't have sued anybody at that point. We didn't make a decision to sue until the big winter problem arose. And then we only sued for that problem. And if that's what they did, there's no coverage, is there? I think the idea, the premise that they intentionally left out damage that they had known about, because it is clear from Parley's 2010 report, they knew about advanced deterioration, hidden damage, and that . . . They don't have to sue for it. But the idea that a homeowner . . . The homeowner often said, don't make a federal case out of everything. The idea that the homeowner would know of advanced deterioration and damage that had been happening for years, but not claim repairs, I don't think that's not how they claimed . . . But there is no evidence . . . Repairs didn't get at the real problem. Exactly. And then when they got at the real problem, I'm sure they went back and did over the early repairs. But that doesn't mean that the claim was for the early . . . I'll also point to one other piece of information that suggests . . . I agree with you that the underlying cause of the water intrusion clearly wasn't addressed with any of these minor repairs. But I'll point to one other piece of information . . . I'm not saying that. Well . . . I agree very well with that. I'll point to one other piece of information that suggests even the lawyers at the time, and this information was passed along to American Family, did not believe that the . . . understood the broad context of which this lawsuit was being pursued. And that is the emails from the Homeowners Association's lawyers sent in October. These are at pages 277 and 278 of the appendix. And in particular one discussing drainage tile. This development sits on quite a slope. And so some of these units, in order to have . . . to avoid water building up around them, have drainage tile and they were being blocked. And the Homeowners Association was claiming these were part of the lawsuit. Totally unrelated to the ice damming. You can't reconcile that, really, with American Family's narrow view of these claims. And the HOA says, we are seeking damages in this lawsuit. We will seek reimbursement for the repairs to this issue. So even the HOA, at that time, is telling this. And this information gets passed on to the insurance carrier. They understand the broad context, which is that as homeowners discover the true extent of their injury in a water intrusion case, the claim is, we want you to fix what is damaged and what needs repaired. Notwithstanding an insurance company's attempt to narrowly construe that policy. And the successor insurer, A, accepted the duty to defend and B, contributed to the settlement. Not entirely in either case. And that is where the damages arise. Not entirely as to the dollars, but I thought, what, they didn't accept the duty to defend? They did accept the duty to defend, but there were still defense costs that were unreimbursed. And that's . . . But that's different. You see, I don't understand why duty to defend is front and center in this case. Your client got a defense and ultimately has a partially uncovered settlement payment that presumably was done with the help and assistance and whatnot of the insurer who was defending. Why do we start with the duty to defend in this case? There would be no defense damages. I think we start with that because that's where . . . The district court found it dispositive. State law says it's easier to prove duty to defend than duty to indemnify. I'm perfectly happy if we start with the duty to indemnify because . . . It's a different case if you start with it. And it's relatively . . . There was never a dispute in the record as to the timing of the actual damage. For that reason, we've always said, and we've said it in our briefs, this is a loss that is exactly what American Family issued insurance for. This is what Clark bought insurance for. And ultimately, when the loss happened, American Family abandoned its insurance. I'll reserve the rest of my time for rebuttal, if I may. Thank you. Mr. Weston? First of all, I'm not 6'3", so I need to operate this fangled thing. May it please the Court, Counsel. I'm Mike Weston. I represent American Family. I want to start with a question Judge Loken asked, and that is, what is fact and what is law? American Family necessarily put the standard of review front and center of its brief because it's required to by rule. And so, why is there not a case that clearly says that the findings that the court made with regard to what was pleaded and what facts were available is because all of the case law calls those fact decisions. All of the case law that determines the duty to defend and ultimately perhaps indemnify in Iowa, look at the facts that are pleaded and the available facts that are in the record at the outset of the litigation. Necessarily then, the court made two important fact findings in this case. And Clark's counsel, in its reply brief, made light of the fact or pointed out the fact that there were two sections of the court's ruling, one finding of fact and conclusions of law, and that some of the facts were interspersed. But the court said it was going to do that on page 3 of the decision. Because it's stuck in the conclusions of law section doesn't mean it's a conclusion of law. There were fact... I think that's true. Okay. First big picture fact finding. There was no pleading of property damage nor any facts available to American family that rationally triggered coverage because the alleged events all took place after the sunset in September of 2006 of the American family policy. Interestingly, the court in its footnote on page 506 of the appendix says better than I ever could how Clark has confused the issue in this case very succinctly. When the court points out that Clark made an argument about when the damage occurred, where the focus of the court's inquiry is when was the alleged damage pleaded and what facts were available. So the first big finding was no allegations. Finding a fact, no allegations that would have triggered coverage. The second, which we have not talked about yet, is that there were no facts that supported the notion that the settlement paid in this case was attributable to any damage that could have occurred during the American family policy period. The record is silent on that. So in effect, the court made another factual finding, and that is there's no evidence to support the settlement that was paid. Let me ask you this. I think if you look at the complaint, if that were the only document in front of the insurance company, you'd be pretty hard-pressed to find a claim for anything other than the damage caused by the water infiltration in 2009. Agreed, Your Honor. But there is one document that gives me pause and I'd ask you to talk about it. They submitted a timeline that was prepared by, I think it was by Hubbell Realty or Hubbell Construction, I'm not sure which, that talked about the fact that the homeowners had been complaining about the water damage for years. Now, why didn't that put you on notice to at least investigate further as to whether the years of water damage would extend back to your policy period? Because of what that paragraph, and this is in the appendix, page 209, because of what the statement goes on to say. The homeowners hired an expert at that time and consulted with an expert, and this would have been in the summer of 2008. And as Judge Loken pointed out, they determined as a group to do repairs to those portions of the skylights and windows and other areas complained of here to remedy the problem. There's no suggestion from that point forward that any of the complaints made in the petition in this lawsuit had anything to do with those. As the court pointed out in its decision, for whatever reason, and the record's not clear, they chose to focus on the winter of 2009 and 2010. In fact, if you go on to read the same timeline, it talks about the significant ice damming and problems in the winter of 2009 and 2010 and relates all of the photographic evidence that is sent to American Family to those events. But is there any duty on American Family? So the plaintiff says, we've been having problems for years, which would extend arguably back to the American Family time. 2008, we hire an expert. We think we solved it, but now we obviously didn't, because only a year later, 2009, we're having even worse problems. Is there any duty to look and see, well, did you really solve it in 2008, and now it's a whole separate incident? Or is it a continuum of problems from 2002 to 2010? Respectfully, the court made a factual leap that was not supported by the record and the material that Clark provided to American Family, and that is that the problems that were repaired in 2008 somehow reoccurred in 2009 and 2010. This document does not say that, and that's the universe of information the American Family had as supporting factual information to go with the very clear lawsuit that pinned all of the problems, in any way you read it, on the problems in the winter of 2009 and 2010. And to follow up on something Judge Loken asked about, oftentimes before a lawsuit is ever filed, there's some type of demand letter sent or some negotiations or discussions about these are what we're claiming and can we agree on a settlement before we even have to file a lawsuit. And then there's a requirement for disclosures under Iowa law, correct, that they have to disclose their damages. Was there anything ever discussed pre-suit or early in the lawsuit that would have put American Family on notice that they were claiming damages for lawsuits prior to 2008? Any kind of pleading or demand letter or anything of that nature? Not that is in the record that was provided to the trial court, and nothing that was... Well, it really doesn't make any difference what was provided to the trial court. It's what was provided to American Family, right? I mean, if there's something out there that should have put American Family on notice but for some reason it wasn't sent to you, that's not your fault. Well, that's absolutely correct. So what the record that we need to look at is what was in front of American Family when they made the decision, the pleadings and any other documents that they sent to you, right? Correct, yes. So I guess I'm saying is, is there anything in any of that documentation where the plaintiffs in the underlying lawsuit outlined their damages? The only communications that come to mind today are some, through the filters of what Hubble wrote in the timeline that we've been talking about, and two e-mails that we saw in October of 2010 between, I think, counsel for either Hubbard or the Homeowners Association and counsel for Clark where they talked about damages generally. And Mr. Lance talked about this notion of a blocked tile. When the court looks at those e-mails, if they choose to do it, and they're on page 277 and 278 of the appendix, that talks about the fact that there could be potential liability this upcoming winter if we don't remedy those drainage tiles from Slip and Falls. That's really the basis of that. But this was a trial on stipulated facts. The universe of what the court considered is in the stipulated facts by the parties and the record that was provided to the court and the kind of early discovery or disclosures in the case of Druid Homeowners Association versus Clark is not in that record. In fact, after December 1st of 2010, American Family received nothing with regard to the ongoing lawsuit. And Judge Loken brought up another important point, and that is the activity of Acuity Insurance Company. Acuity Insurance Company came on the risk immediately after American Family in the fall of 2006 and was on the risk during the winter of 2009-2010. Now, Acuity accepted in September of 2010 the defense of the case under reservation of rights. But what's important is when the court looks at the reservation of rights letter that Acuity wrote, given these facts, it could have very easily have said that there were damages claimed that predated the Acuity policy. Nowhere in that reservation of rights letter is there such a statement. Further, there's nothing in that reservation of rights letter other than reservations, some of which were the Westlake case, which changed whether or not a construction defect can be an occurrence under a CGL policy. But nothing questioned the timing. And so these litigants went forward, perhaps in the back of their mind, thinking someday we'll go after American Family, but as Judge Loken pointed out, being defended, being defended under a CGL policy, the remedy that they asked American Family for. And so getting back to the principal question, this court has to decide whether the trial court in this case was clearly erroneous in making the decision that there were not facts pleaded, in this case, to trigger coverage. The court found there was none. And on the settlement in the case, the issue of the settlement that was paid, the record is devoid of any evidence whatsoever about what was paid for what damage. And that burden is on Clark to do that. They have to prove under Iowa law what damages were paid in settlement, what damages were paid in settlement that would have been attributable to the American Family policy had the American Family policy applied in the case. Now, Mr. Lance talked about getting back to the standard, the burden. Just a question of whether Stein's seed just makes it automatic, no duty to defend equals no duty to indemnify. I thought about that. What if there was a bench trial with Hubbell, is that the third party? Yes, it was. And Hubbell introduced it. Same complaint that we have here, the damage. But during trial, Hubbell introduces evidence of earlier damage, and the trial court allows an amendment to conform to the evidence. Right. What does that do to American Family's duty to indemnify? Nothing, because the American Family is on no notice of that. In fact, in the First Bank of Missouri Valley case, the Iowa Supreme Court addresses the notion that the possibility of an amendment to add negligence claims or claims that would trigger cover in the future does not necessarily trigger. I'm not talking about the possibility. I'm talking about actuality with notice in the middle of the trial. American Family, I would suggest you might have to reassess its coverage position if it was confronted with an amendment, but it was never confronted with an amendment. So that's a hypothetical question in this case. No, it's not 100% no defense equals no amendment. Things can happen. Well, there's two cases that are cited in the briefs that address that, the Red Giant Oil case and the United Health Group case, both of those cases stand for the proposition that the burden is on the insured in the case where there's a coverage question and coverage is not afforded it to show what portions of the damages in a settlement are attributable to the insured, the insurance carrier that did not cover the initial lawsuit and those that would be uncovered. And in this case, the trial court correctly pointed out it had no evidence to determine what damages was paid for anything out of the $525,000 settlement. How do you reject an expert report on a stipulated record without ever seeing the expert, without ever hearing the expert testify, without any cross-examination? I found that a little puzzling. That wasn't the stipulation. The stipulation was that in the stipulated facts that American Family had no facts available to it. To the contrary, that doesn't answer the question of what facts were pleaded in the case. No, but what I'm talking about is, you said that Clark has the duty to show that some of the settlement was for damages that occurred during the policy period. They do that by submitting an expert report and the trial court says, well, I'm going to reject that expert report, but there was no testimony presented? Correct. How do you reject an expert report when you're doing a trial on a stipulated record? Well, the court did so in its ruling, but there's facts that the court found that would contradict the report on its face. The first of those is the very fact that the pleading in the case pointed to damages that came from the 2009-2010 ice damming event and the reports in the timeline that talked about the damages that came from that event and the e-mails that we discussed previously wherein another unit owner had found damages emanating from the ice damming event. And so the court knew in that context, setting aside what the court thought about the opinion on its face, the court knew that there were allegations, proof, and factual record to suggest that there were damages outside the American Family policy and it really had nothing to go on otherwise. And so when this court looks at the fact findings of the trial court, it will conclude that the court was not clearly erroneous and that there should have been no coverage afforded in this case. Thank you for your time. Thank you, counsel. Mr. Rebaud, Mr. Lance. Thank you, Your Honor. This court sees a number of legal standards month in and month out. I'm betting that not many are as generous as the rational possibility standard that exists under Iowa law in this context. The petition filed by the HOA did not address when the damage first started because that's not an element of a claim they ever had to prove. But that left open the possibility that the damage certainly had started much earlier than they knew. They, in fact, alleged that they had uncovered hidden damage. The question really here is that all the materials, particularly that timeline, did it undoubtedly and unambiguously exclude the possibility of damage during American Family's coverage period? And the answer is no. In order to prevail here, Clark doesn't need to convince you that American Family's view of the record is unreasonable. That's not the issue. The issue is whether Clark's view is rationally possible based on the entire record that was submitted to American Family. Nor do we need to convince you that all of those 200 pages of reports and notes and photographs disprove the limited view that American Family has offered. Instead, it's possible both sides' interpretations here find support in those 200-plus pages. And if that's true, American Family owed a defense because Iowa law is well settled that any ambiguities, any uncertainties about coverage have to be construed in favor of the insured. So inasmuch as the court believes that those materials supplied to American Family were subject to competing interpretations, there was a defense of . . . You still have to prove what has to be indemnified? Even if we agree with you on the covenant to defend, what does that get you as damages? There is a stipulated amount of damages that is partial . . . For the defense cost? For the defense cost at approximately . . . There is a separate duty to indemnify, and the threshold question for the district court on the duty to indemnify was the lack of a duty to defend. I think that resolves that part of it. Okay, but if I accept your argument on a duty to defend, why does that get you anything other than the defense cost worth reimbursed? It does get us that. I think the arguments . . . I'm happy to address the other duty to indemnify issues. You're out of time. I thought it would require you to prove what portion of the settlement was in fact attributed to damage during the policy period. On that point, I think the stipulation submitted provided enough information for . . . provided all the information that was needed to understand what damages were settled, in particular because it excluded every other possibility as to when . . . what other claims that might have been settled, and the stipulated expert report was as to the timing of damage. I understand, but I don't understand. Thank you, Your Honor. Thank you, counsel. The case has been thoroughly well-briefed and argued, and we will take it under advisement. Thank you.